UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------X
PADO, INC. and HOMELEC KOREA CO., LTD.,

                Plaintiffs,

       -against-

SG TRADEMARK HOLDING CO LLC, WIEDER
AND FRIEDMAN ENTERPRISES INC., MOSHE
FRIEDMAN a/k/a/ COY WEST, HERSCHEL
FRIEDMAN, ABC CORPORATIONS 1-10,
and JOHN DOES 1-10,

                Defendants.
------------------------------------------------------------X
SG TRADEMARK HOLDING CO LLC and
WIEDER AND FRIEDMAN ENTERPRISES INC.,

                Counterclaimants,

       -against-

PADO, INC., HOMELEC KOREA CO., LTD.,
STEVEN LEE, ABC CORPORATIONS 1-10,
and JOHN DOES 1-10,

                Counterclaim-Defendants.
------------------------------------------------------------X

MEMORANDUM AND ORDER
19-CV-6614 (RPK) (RER)

RACHEL P. KOVNER, United States District Judge:

This is one of a handful of cases in which a litigant has sought a court order requiring an

adversary to withdraw an Amazon grievance in hopes of being allowed to resume sales on that

platform. *See Home IT, Inc. v. Wen*, No. 19-CV-7070, 2020 WL 353098 (E.D.N.Y. Jan. 21, 2020);

*Studio010, Inc. v. Digital Cashflow, LLC*, No. 20-CV-01018, 2020 WL 3605654 (W.D. Wash.

July 2, 2020); *Shenzhen Tange Li'An E-Commerce, Co. v. Drone Whirl LLC*, No. 20-CV-738,

2020 WL 6821330 (W.D. Tex. July 13, 2020).  In this case, the makers of the Purewave handheld

massage device ask that the makers of the rival Mighty Bliss device be required to withdraw

trademark infringement complaints to Amazon and other companies and barred from submitting

additional similar claims.  Such motions raise questions regarding a court's authority to require a

litigant to rescind statements that reflect the litigant's genuine views on a pending question.  *Cf. GP*

*Indus., Inc. v. Eran Indus., Inc*., 500 F.3d 1369, 1373-74 (Fed. Cir. 2007) (emphasizing "the rarity

of an injunction being granted against communicating with others concerning one's patent rights"

because such an injunction is not "an injunction against infringement, but an injunction against

communication"); *Kramer v. Thomson*, 947 F.2d 666, 680-82 (3d Cir. 1991) (reversing injunction

that required defendant to retract statements found to be libelous).  But I need not resolve those

questions to decide this motion, because even if I could issue a preliminary injunction awarding

that relief, the movant has failed to show the irreparable harm required to obtain a preliminary

injunction.

BACKGROUND

Plaintiffs Pado, Inc. ("Pado") and Homelec Korea Co., Ltd. ("Homelec") bring this action

against competitors SG Trademark, Inc. ("SG"), and Wieder and Friedman Enterprises, Inc.

(together, the "Corporate Defendants")—as well as related entities and individuals—for alleged

violations of plaintiffs' intellectual property rights in their handheld massager.  *See* Second Am.

Compl. ("SAC") (Dkt. #32).  Pado sells its handheld massager under the name "Purewave," for

which Pado asserts nationwide common law trademark rights.  *See* SAC ¶¶ 14, 27.  Defendants

sell their handheld massager under the mark "Mighty Bliss."  *See id.* ¶¶ 8-9, 49-50.  Pado alleges

that defendants' Mighty Bliss massager infringes on plaintiffs' patent rights in their Purewave

massager, *see id.* ¶¶ 39-51, and that defendants' Mighty Bliss user manual infringes on plaintiffs'

copyright to the Purewave massager user manual, *see id.* ¶¶ 67-80.  Plaintiffs also allege that

defendants violated plaintiffs' common law rights to the Purewave mark by using the term "Pure

2

Wave" in a product description on defendants' website and in certain advertisements. *See id.*
¶¶ 77-78, 81-83.

The parties' trademark dispute expanded after the case was filed. Seemingly in response
to the lawsuit, defendant SG purchased the registered trademark "Purwave" (without the first "e")
from a third party, Sigma Instruments, Inc. ("Sigma"). *See* Friedman Decl. ¶¶ 11-13 (Dkt. #85-
49); Friedman Decl. Ex. B (Dkt. #85-51). The Purwave registration had previously thwarted
Pado's efforts to register its common law Purewave mark. *See* Mem. of L. in Supp. of Mot. for
Prelim. Inj. at 4 ("Pl.'s Br.") (Dkt. #59-1); Mandaro Decl. Exs. 4-6 (Dkt. #85-5, #85-6, and #85-
7). Subsequently, in January 2020, SG complained to Amazon that Pado was infringing on SG's
rights to the Purwave mark by selling its handheld massager under the Purewave mark through
Amazon's platform. *See* Lee Decl. ¶ 2 (Dkt. #59-2). As a result, Amazon removed Pado's
Purewave product from its platform. *See id.* ¶¶ 3-7. Pado's sales dropped significantly as a result.
*See* Mandaro Decl. Ex. 13 (Dkt. #84-14, #85-14); Mandaro Decl. Ex. 3 at 221:16-23 ("Lee Dep.")
(Dkt. #84-4, #85-4). Amazon has refused to relist Pado's Purewave massager because SG's
Purwave trademark is registered. *See* Lee Decl. ¶ 7. SG also filed similar complaints with certain
social media companies that Pado uses to advertise its Purewave massagers. *See id.* ¶ 4.

In response, Pado and Homelec filed a second amended complaint that adds new claims
seeking cancellation of the Purwave trademark registration under 15 U.S.C. § 1064 and a
declaratory judgment under 28 U.S.C. § 2201 that Pado and Homelec did not engage in trademark
infringement, false designation of origin, or unfair competition in connection with SG's
trademarks. *See* SAC ¶¶ 190-199, 233-240. The Corporate Defendants then asserted
counterclaims, including trademark infringement under 15 U.S.C. § 1114, false designation of
origin and unfair competition under 15 U.S.C. § 1125, and unfair competition under New York

common law.  *See* Am. Countercl. ¶¶ 238-246, 254-271, 272-283 (Dkt. #54).  In its answer to the amended counterclaims, Pado argues that SG's registration of the Purwave trademark should be cancelled, because Sigma abandoned it before selling it to SG and because the trademark assignment to SG was an invalid assignment in gross.  *See* Pado Answer to Am. Countercl. at 43-44 (Dkt. #60).

Pado now seeks a preliminary injunction based on its abandonment and assignment-in-gross arguments.  It asks that SG be required to retract its infringement complaints against Pado and that the defendants be prevented from filing such complaints going forward.  *See* Pl.'s Br. at 1-2.  Plaintiffs filed a motion for partial summary judgment several weeks later, seeking summary judgment on the same two affirmative defenses, as well as on plaintiffs' related cancellation and declaratory judgment claims.  *See generally* Mot. for Partial Summ. J. (Dkt. #64).  At defendants' request, the parties engaged in several months of expedited discovery after those motions were filed.  *See* Order (Mar. 25, 2020).  I held oral argument on both motions.  *See* Minute Entry and Order (Sept. 1, 2020).

I.      Findings of Fact

As described below, I conclude that Pado has not met its burden of demonstrating irreparable harm under the preliminary injunction standard.  I therefore limit my findings to the facts pertinent to irreparable harm, most of which are undisputed.

A.      Sales

Pado has been unable to sell its Purewave massager through Amazon because of SG's infringement complaint.  As a result, the company has suffered a significant drop in sales of that massager, which otherwise earned Pado "more than $70 million" since 2015.  Lee Decl. ¶¶ 3, 10, 18.  Pado has continued to sell its Purewave massagers through its own website, padousa.com.

*See* Lee Dep. at 82:23-83:6.  Pado's sales through its website have increased in recent months, although Pado suggests that the increase has not offset its lost Amazon sales.  *See id.* at 211:2-17.

B.      Customer Reviews on Amazon

Although Pado is not currently selling its Purewave product on Amazon, customers are still able to read and submit reviews of Pado's massager on Amazon.  But the frequency with which customers are leaving reviews of its massager on Amazon has declined since Pado stopped selling its massager through that platform.  *See* Lee Dep. at 209:17-211:12; *see also* Lee Decl. ¶ 10. According to Pado representative Mr. Steven Lee, when a customer searches for "Purewave" on Amazon, the site returns a list of handheld massager products other than Pado's device, with the Mighty Bliss massager listed as the top result.  *See* Lee Dep. at 168:3-14.  Pado claims that its product's ranking has fallen in part because Amazon's algorithm factors in the recency of reviews and whether the reviews are from "verified purchasers" through Amazon, and in part because some of the most recent reviews appear to be from customers who may have purchased the product years before and are now having problems with "legacy" devices.   Oral Arg. Tr. 43:12-23; 45:12-24; 53:21-22.  For purposes of this motion, I accept as true Pado's unrebutted assertion that its customer reviews on Amazon have declined in frequency and that its ranking on Amazon has dropped slightly.

C.      Pado's Continued Interest in Selling on Amazon

The preliminary injunction record indicates that Pado would sell its Purewave massagers on Amazon again, if it could.  While SG points to a section of Mr. Lee's deposition in which he agreed that "there is a possibility" that Pado might not sell on Amazon again even if permitted, Lee Dep. at 104:10-15, Mr. Lee clarified near the end of his deposition that Pado would "absolutely" sell on Amazon again if it could, *see id.* at 226:9-15.  Mr. Lee estimated that "the vast

majority" of Pado's sales of the Purewave massager came from Amazon before Amazon took down the product.  Lee Decl. ¶ 16.

In arguing to the contrary, SG points to a screenshot from Pado's website stating that Pado "decided" not to sell the Purewave massager on Amazon in the United States because Amazon is "not properly regulated." *See* Mandaro Decl. Ex. 19 at 13 (Dkt. #85-20).  But Mr. Lee has credibly claimed that Pado added the information about Amazon to its website as part of a remarketing strategy to salvage some of its lost sales. *See* Lee Dep. at 101:8-14; Reply Mem. of L. in Supp. of Mot. for Prelim. Inj. at 17-18 ("Reply Br.") (Dkt. #82).  On balance, the current record evidences that Pado would sell its Purewave massager on Amazon if it obtained the ability to do so—an ability that Pado has been expending substantial litigation resources to regain.

DISCUSSION

I.      Preliminary Injunction Standard

A preliminary injunction is an "extraordinary and drastic remedy." *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997) (citation omitted).  Such injunctions are "never awarded as of right." *Winter v. Nat. Res. Def. Council*, 555 U.S. 7, 24 (2008).  To obtain such an injunction, as a general matter, a litigant must establish (i) a likelihood of success on the merits, (ii) a likelihood of irreparable harm in the absence of preliminary relief, (iii) that the balance of equities tips in the movant's favor, and (iv) that an injunction is in the public interest. *Am. Civil Liberties Union v. Clapper*, 804 F.3d 617, 622 (2d Cir. 2015) (citing *Winter*, 555 U.S. at 20); *see Metro. Life Ins. Co. v. Bucsek*, 919 F.3d 184, 188 n.2 (2d Cir. 2019).  Because I conclude that Pado has not made the requisite showing of irreparable harm, I do not consider whether Pado has met the additional requirements for a preliminary injunction.

II.      Irreparable Harm

To qualify for a preliminary injunction, Pado must demonstrate that it is "likely" to experience irreparable harm "in the absence of an injunction." *Winter*, 555 U.S. at 22 (emphasis omitted).      Courts consider harm "irreparable" when it "cannot be remedied after a final adjudication." *Salinger v. Colting*, 607 F.3d 68, 81 (2d Cir. 2010).  The harm must be "actual and imminent," not "remote or speculative." *Dexter 345 Inc. v. Cuomo*, 663 F.3d 59, 63 (2d Cir. 2011) (quoting *Tom Doherty Assocs. v. Saban Ent., Inc.*, 60 F.3d 27, 37 (2d Cir. 1995)).

Pado has not made that showing here.  As a general matter, lost sales can be remedied through damages at the close of a case.  *See, e.g.*, *Tom Doherty Assocs.*, 60 F.3d at 37.  In keeping with that principle, Pado does not contend that its loss of profits from Amazon sales qualifies as irreparable harm.  *See* Oral Arg. Tr. 38:9-10 (stating that irreparable harm is "not loss of sales, that's compensable by monetary damages"); 43:5-6 ("Again, we're not contending the loss of sales shows irreparable harm.").  And Pado, which is now selling the Purewave massager through its own website, has not put forward evidence establishing that the loss of Amazon sales threatens "the very viability of [its] business." *Tom Doherty Assocs.*, 60 F.3d at 38; *see Nemer Jeep-Eagle, Inc. v. Jeep-Eagle Sales Corp.*, 992 F.2d 430, 435 (2d Cir. 1993).

Pado instead argues that it is experiencing irreparable harm in the form of a loss of goodwill.  Because damages from loss of goodwill are often "not easily measurable in monetary terms," 11A Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 2948.1 (3d ed. 2020), loss of goodwill "can constitute irreparable harm," *Tom Doherty Assocs.*, 60 F.3d at 38; *see, e.g.*, *Register.com, Inc. v. Verio, Inc.*, 356 F.3d 393, 404 (2d Cir. 2004).  But not every loss of goodwill qualifies.  For instance, in *Dexter 345*, the court of appeals did not dispute that plaintiff hotels would suffer a loss of goodwill from a new state law because of an "inability to

7

continue operating their budget hotel business as they had in the past," 663 F.3d at 63.  But the court concluded that the harm was not irreparable because the hotels had data regarding their operations before the law was enacted.  The court reasoned that hotels' "long history of operation . . . ensures that they will be able to calculate money damages for any loss of goodwill they may have suffered" if the plaintiffs prevailed on their underlying claim. *Ibid.*

Pado has not established that it will suffer an injury "for which a monetary award cannot be adequate compensation" under these principles. *Tom Doherty Assocs.*, 60 F.3d at 37.  Pado argues that the Amazon ranking of the Purewave massager has declined as a result of the Amazon suspension, along with the massager's average rating on the Amazon site. *See* Oral Arg. Tr. 42:12-19; 43:14-22; 51:13-52:4.  And it argues that these harms constitute a loss of goodwill, because customer reviews are "gold to a company that sells on Amazon.  The way people shop by Amazon is oftentimes they will look at customer review[s] and if there are a number of positive reviews, and particularly if there are a number of recent positive reviews, a customer is more likely to buy those products." *Id.* at 40:6-11; *see id.* at 45:18-24 ("[E]very day we're not on Amazon, we're not getting those organic reviews.").

These arguments do not show irreparable harm.  Amazon's suspension of Purewave sales may well affect the device's ranking and reviews on Amazon.  But insofar as Pado is arguing that this diminished Amazon standing will lead to fewer Amazon sales even if the Purewave device is restored to the site, Pado offers no persuasive account of why those diminished Amazon sales cannot be modeled and compensated.  Much like the plaintiffs in *Dexter 345*, Pado has a "long history" of sales data to use in doing so, 663 F.3d at 63.  Pado has also not put forward persuasive evidence that Amazon rankings and reviews materially affect sales on other platforms.  But even assuming that Amazon reviews have such effects beyond Amazon, Pado has similarly failed to

demonstrate why it cannot calculate the resulting drop-off in sales of the Purewave massager, given

Pado's "long history" of selling the device, *ibid.*  In sum, the goodwill injury that Pado alleges—

an alleged injury that is inextricably intertwined with declining Amazon sales—does not appear to

be irreparable.

Pado has likewise failed to demonstrate that its continued loss of goodwill constitutes

irreparable harm on the theory that Pado is being partially excluded from the handheld massager

market.  *See, e.g.*, Oral Arg. Tr. 59:7-21; 61:15-62:2 (citing *Country Fare LLC v. Lucerne Farms*,

No. 11-CV-722, 2011 WL 2222315 (D. Conn. June 7, 2011)).   Courts in this circuit have

recognized that irreparable harm from a loss of goodwill may exist "where the dispute between the

parties leaves one party unable to provide its product to its customers," *Rex Med. L.P. v. Angiotech*

*Pharms. (US), Inc.*, 754 F. Supp. 2d 616, 621 (S.D.N.Y. 2010), in part because a party's inability

to supply its customers with products can threaten its "reputation" as a "dependable distributor,"

*John B. Hull, Inc. v. Waterbury Petroleum Prods., Inc.*, 588 F.2d 24, 29 (2d Cir. 1978) (internal

quotations omitted); *see Reuters Ltd. v. United Press Int'l, Inc.*, 903 F.2d 904, 909 (2d Cir. 1990)

(noting that in cases involving a "product source . . . suspending delivery to a distributor,"

irreparable harm often consists of "the loss of customers and the competitive disadvantage that

result[s] from a distributor's inability to supply its customers with the terminated product");

*Country Fare LLC*, 2011 WL 2222315, at *5 (finding that plaintiff would be irreparably harmed

from a loss of goodwill if it could not deliver its "quintessential seasonal product" during "its peak

season").   But here, there is no suggestion in the record that Pado has been unable to meet its

customers' demands by making sales through its own website.[*]

---

[*] Pado's briefing papers could be read as advancing the theory that it will suffer an irreparable loss
of goodwill absent injunctive relief because Amazon customers may think that defendants' Mighty
Bliss handheld massagers were Pado's products, when they were not able to find Pado's products

Finally, to the extent Pado argues that it is experiencing irreparable harm because it has been "labeled" an "infringer," *see* Reply Br. at 15 n.7, that argument does not persuade. Pado suggests that the removal of the Purewave massager from Amazon has caused irreparable harm to the company's relationship with customers who may "speculat[e] as to why the listing may have been abruptly removed." *Ibid.* But Mr. Lee testified that Pado is continuing to sell its other products on Amazon, *see* Lee Dep. at 80:19-23, and there is nothing in the record to suggest that customers have raised any concerns about possible infringement. Under these circumstances, Pado had not established irreparable harm on the theory that Amazon customers may infer that Pado is a trademark infringer.

CONCLUSION

Pado has failed to demonstrate that it will suffer irreparable harm in the absence of a preliminary injunction. Accordingly, the motion for a preliminary injunction is denied.

SO ORDERED.

 */s/ Rachel Kovner*      

RACHEL P. KOVNER
United States District Judge

Dated: December 22, 2020
      Brooklyn, New York

---

on Amazon. But Pado made clear at oral argument that it was not advancing that theory of irreparable harm. *See* Oral Arg. Tr. 39:18-40:4.